# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1998
No. 01-2000

_____

| | | |
|---|---|---|
| Arkcom Digital Corporation, | * | |
| | * | |
| Plaintiff - Appellant/ | * | |
| Cross Appellee, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Xerox Corporation, | * | |
| | * | |
| Defendant - Appellee/ | * | |
| Cross Appellant. | * | |

_____

Submitted: December 12, 2001

Filed: May 10, 2002

_____

Before LOKEN and BYE, Circuit Judges, and BOGUE,[*] District Judge.

_____

LOKEN, Circuit Judge.

After Xerox Corporation terminated Arkcom Digital Corporation as an authorized Xerox service agent, Arkcom filed suit in Arkansas state court alleging breach of contract and violations of the Arkansas Franchise Practices Act, Ark. Code

---

[*]The HONORABLE ANDREW W. BOGUE, United States District Judge for the District of South Dakota, sitting by designation.

Ann. §§ 4-72-201 *et seq* (AFPA). Xerox removed the action and moved to compel arbitration. The district court[1] granted the motion and dismissed Arkcom's complaint without prejudice. Arkcom appeals. We have jurisdiction to review a final order compelling arbitration. See 9 U.S.C. § 16(a)(3). Our task is to review the district court's decision to determine "whether there is a valid agreement to arbitrate and whether the specific dispute at issue falls within the substantive scope of that agreement." Larry's United Super, Inc. v. Werries, 253 F.3d 1083, 1085 (8th Cir. 2001). We conclude the dispute is arbitrable. As that is the only issue properly before us, we affirm without deciding other issues raised by the parties on appeal.

The parties' Authorized Service Agent Agreement (the "Agreement") defined "Covered Disputes" to include those "arising out of or related to the . . . termination of this Agreement" and provided that "a Covered Dispute . . . will be decided through arbitration." The arbitration provision prohibited the arbitrator from awarding any remedy barred by the Agreement's Limitation on Liability provision:

> Neither party . . . shall have any liability to the other for (1) any punitive damages; or (2) any lost profits based upon a timeframe of more than six months (with "lost profits" to be defined as 10% of the total amount paid by Xerox under this Agreement for the 6 month period preceding the claim) . . . or any other indirect, special, exemplary, incidental, or consequential damages.

Arkcom's complaint alleged that the Agreement created a franchise relationship and sought relief expressly authorized by the AFPA -- actual damages, attorney's fees, and costs of suit. See Ark. Code Ann. § 4-72-208. In opposing Xerox's motion to compel arbitration, Arkcom argued: (1) Arkansas law applies, even though the Agreement provides that Covered Disputes "shall be governed by the

---

[1]The HONORABLE STEPHEN M. REASONER, United States District Judge for the Eastern District of Arkansas.

law of New York State;" (2) Arkcom is a franchisee entitled to AFPA remedies; and therefore (3) the parties' agreement to arbitrate is unenforceable because it prohibits the arbitrator from awarding remedies expressly authorized by the AFPA. Xerox countered by arguing (1) New York law applies, therefore the AFPA does not; (2) even if Arkansas law applies, the Agreement did not create a franchise; and (3) even if the AFPA applies, any conflict based on availability of remedies does not affect arbitrability. Though the parties have argued all these issues on appeal, "a court compelling arbitration should decide only such issues as are essential to defining the nature of the forum in which a dispute will be decided." Larry's United Super, 253 F.3d at 1085.

Because arbitration is a matter of contract, the first question is whether the parties have agreed to arbitrate the dispute at issue. Arkcom concedes, as it must, that this contract termination dispute falls within the scope of the Agreement's arbitration provision. The parties agreed to arbitrate all Covered Disputes, defined to include those arising out of termination of the Agreement. This general agreement to arbitrate also encompasses Arkcom's claims under the AFPA. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985) (the rule resolving doubts in favor of arbitration applies "where a party bound by an arbitration agreement raises claims founded on statutory rights"); Southland Corp. v. Keating, 465 U.S. 1 (1984) (compelling arbitration of claims brought under the California Franchise Investment Law).

Arkcom argues that the agreement to arbitrate is nonetheless unenforceable because it frustrates the purposes of the AFPA by precluding the arbitrator from awarding remedies expressly authorized by the AFPA -- actual damages in addition to lost profits, attorney's fees, costs of litigation, and treble damages in the case of fraud. See Ark. Code Ann. §§ 4-72-207, -208(a), (b). Where the parties have agreed to arbitrate a dispute, that agreement is enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The Supreme Court has repeatedly held that the FAA preempts (i) state laws that "require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration," Southland, 465 U.S. at 10; and (ii) state laws that condition the enforceability of arbitration agreements on requirements "not applicable to contracts generally," Doctor's Assocs. v. Casarotto, 517 U.S. 681, 687 (1996). See generally Perry v. Thomas, 482 U.S. 483 (1987). However, this case raises a different issue. The AFPA does not purport to reject or condition arbitration as a forum for the resolution of franchise termination disputes. Rather, Arkcom alleges that *this particular agreement to arbitrate* is unenforceable because it conflicts with essential rights and remedies conferred by the state statute.

This issue has frequently been raised by parties seeking to avoid arbitration of federal statutory claims that fell within the scope of their agreements to arbitrate. In Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991), for example, the Supreme Court rejected the contention that federal statutory age discrimination claims are not arbitrable and enforced an agreement to arbitrate such a claim. However, citing earlier decisions enforcing agreements to arbitrate statutory antitrust, RICO, and securities laws claims, the Court cautioned:

> In these cases we recognized that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."

500 U.S. at 26, quoting Mitsubishi Motors, 473 U.S. at 628. The Court also rejected a contention that the arbitration remedies available in Gilmer were not broad enough to further the purposes of the federal age discrimination statute, noting that the applicable arbitration rules there did "not restrict the types of relief an arbitrator may award." Id. at 32.

The Supreme Court's caution that an agreement to arbitrate federal statutory claims may not abrogate substantive statutory rights places in sharper focus the question Arkcom raises here -- whether contractual limitations on an arbitrator's remedial authority may be applied to override broader statutory remedies. The few federal circuits to address the issue are divided as to its *procedural* consequences. Arkcom relies on decisions holding that an arbitration agreement purporting to limit the arbitrator to fewer remedies than the statute allows is unenforceable. See Paladino v. Avnet Computer Techs., Inc., 134 F.3d 1054, 1062 (11th Cir. 1998) (arbitrability of Title VII claims "rests on the assumption that the arbitration clause permits relief equivalent to court remedies"); Graham Oil Co. v. ARCO Prods. Co., 43 F.3d 1244, 1248-49 (9th Cir.) (Petroleum Marketing Practices Act claim), cert. denied, 516 U.S. 907 (1995). But this court expressly declined to follow Paladino and Graham in Larry's United Super, 253 F.3d at 1086. Agreeing with the Third Circuit's decision in Great Western Mtg. Corp. v. Peacock, 110 F.3d 222, 230 (3d Cir.), cert. denied, 522 U.S. 915 (1997), we held that the extent of an arbitrator's remedial authority is an issue for the arbitrator:

> Whether a prospective waiver of punitive damages violates the public policy underlying RICO's treble damages provision is a matter for the arbitrators in the first instance when fashioning an appropriate remedy if a RICO claim is proven to the arbitrators' satisfaction, and we express no views on the issue at this time. We are limited to determining whether the matter is arbitrable. We hold that it is.

This case involves a claim under a state statute, not a federal statute such as RICO. But Great Western, a case involving the issue of whether arbitration would frustrate the purposes of a state statutory claim, provides direct guidance. The Third Circuit noted that, while the FAA preempts state laws limiting the selection of an arbitral forum, it does not broadly preempt substantive state law rights. Thus, the issue is not preemption, but whether the parties validly waived state law rights by

-5-

entering into an arbitration provision that restricts the available remedies. That issue, the court concluded -

> cannot be asserted to avoid the *arbitration* agreed to therein. Rather, the party challenging the validity of such waivers must present her challenge to the arbitrator . . . .

110 F.3d at 231 (emphasis in original).[2]

Great Western -- followed by this court in Larry's United Super -- resolves the issue before us. Arkcom and Xerox agreed to arbitrate this dispute, including Arkcom's AFPA claim. Whether the Agreement validly limits the arbitrator's remedies for an AFPA violation does not affect the validity of the agreement to arbitrate. Rather, issues of remedy go to the merits of the dispute and are for the arbitrator to resolve in the first instance. Accord St. Paul Fire & Marine Ins. Co. v. Courtney Ent., Inc., 270 F.3d 621, 625 (8th Cir. 2001).

For the foregoing reasons, we conclude the dispute is arbitrable without regard to other issues argued on appeal -- whether New York or Arkansas law governs, and whether the Agreement created a franchise governed by the AFPA. Those issues are

_____

[2]Arkcom relies heavily on Powertel, Inc. v. Bexley, 743 So. 2d 570, 574 (Fla. Dist. Ct. App. 1999), where the court refused to compel arbitration of a statutory consumer protection claim under an arbitration clause that conferred more limited remedial authority than the state statute. However, the court in Powertel relied primarily upon a state law theory of unconscionability. Here, Arkcom does not argue (and in our view could not argue) that its agreement to arbitrate was unconscionable under Arkansas or New York law. To the extent the court in Powertel also relied on Paladino, its decision does not reflect the law of this circuit.

for the arbitrator in the first instance, not this court or the district court. Therefore, to the extent a portion of the judgment could be construed as determining that New York law governs the dispute to be arbitrated, that portion is vacated.

The judgment of the district court compelling arbitration and dismissing Arkcom's claims without prejudice is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.